**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **TIMOTHY K. DOUGLASS, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:12-CV-1760-B** |
| | § | |
| **MARY ADAMS BEAKLEY, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' First Amended Complaint ("FAC" or "Amended Complaint") filed September 4, 2012, as well as Plaintiffs' ("the Douglasses" or "the Douglass family") Synopsis and Defendants' Response thereto. For the reasons listed below, the Court declines to dismiss the Amended Complaint for failure to meet the applicable pleading standards.

**I.**

**FACTUAL BACKGROUND**[1]

This case concerns Defendants' alleged mismanagement and fraud in connection with the Douglasses' funds invested through Defendants. Plaintiff Sam Douglass and his children Mark, Scott, and Tim Douglass received approximately $9,400,000 as payment from an out of court settlement in connection with the death of Sam Douglass' wife in 2001.[2] FAC ¶ 37. The Douglasses allege that

[1]The Court takes the allegations of the Amended Complaint as true in resolving whether the Amended Complaint meets the applicable pleading standards.

[2]The Amended Complaint and the Original Complaint state that Sam Douglass' wife died "[a]pproximately eleven years ago." FAC ¶¶ 37; Original Compl. at 39. (The Court cites to the page numbers of the Original Complaint.) Other filings in this case indicate that Sam Douglass' wife passed away on

former Defendant John William Beakley ("John Beakley") subsequently approached them and suggested that they allow him by and through Defendant Beakley & Associates, P.C. ("Beakley & Associates" or "BAPC"), to serve as an investment advisor. *Id.* at ¶ 38. The Douglasses further recount that John Beakley held himself out to be one of Sam Douglass' best friends and acted as if he were a mentor and friend to the Douglass family, while at the same time professing his expertise as an investment adviser.[3] *Id.* at ¶ 39. As unsophisticated investors, the Douglass family was allegedly convinced by John Beakley, acting on behalf of Beakley & Associates, that he would be best able to manage the money because of their longstanding familial, church, and accounting relationship as well as his assurances that they could rely upon him and Beakley & Associates "to see to it that their best and financial interests were looked out for and safely cared for," and that they "would never have to worry about retirement." *Id.* at ¶¶ 40, 42. The Douglasses maintain that, relying on these assurances and their prior relationship, they decided to invest their money under the advice and care of John Beakley and Beakley & Associates. *Id.* at ¶ 43.

Upon receiving funds from the Douglasses, John Beakley and Beakley & Associates proceeded to set up various partnerships and designated FLP Management, Inc. ("FLP") as managing general partner. *Id.* at ¶¶ 44-47. John Beakley and Beakley & Associates then allegedly used FLP to exclusively control the partnerships, including selecting and maintaining the investments owned by

---

February 8, 2001. *See*, *e.g.*, Mot. Hr'g Tr. Mar. 14, 2012, filed Apr. 5, 2012, at 7-8 (testimony of Sam Douglass). The filings do not indicate precisely when the Douglasses received their out of court settlement. *See*, *e.g.*, *id.* at 8 (Sam Douglass testimony discussing that the Douglasses received settlement payment "at some point after" the death of Sam Douglass' wife).

[3]The Douglasses also allege that the Individual Defendants, Mary Adams Beakley, David Janson Beakley, Joel William Beakley, and Amy Janise Beakley, also held themselves out as friends of the Douglasses. *Id.* at ¶ 39.

each partnership, although the partnerships were 99% owned by the Douglasses. *Id.* at ¶ 47. The Douglasses maintain that Beakley & Associates and FLP, further complicating the structure of the Douglasses' investments, proceeded to invest the Douglasses' money into entities at least partially controlled or owned by John Beakley and his family ("the Beakleys"). This resulted in a limited partnership or partnerships owned 50% by the Douglasses, 1% by FLP, and 49% by John and Mary Beakley, Michael Beakley, Amy Beakley, Joel Beakley, and David Beakley, though the Beakleys allegedly provided little or *de minimis* capital contributions for their respective ownership. *Id.* at ¶¶ 48-49. The Douglasses' money was eventually invested in several businesses, including former Defendant Roundtable Corporation; Defendant DQ Real Estate Development, Ltd.; Defendant Tierra de Tejas Development, Ltd.; Defendant I-27 Marine & RV, Ltd.; Defendant I-27 Powersports, Inc.; RH Real Estate Development, Ltd.;[4] Defendant Manna Real Estate Development, Ltd.; Defendant FLP Real Estate Development, Ltd.; Defendant Mama Mia Pizza Kitchen, Ltd.; and Defendant Thermal Fluid Technologies, Inc. (together with Beakley & Associates and FLP, the "Beakley Entities"). *Id.* at ¶¶ 50-53 (and exhibits cited therein). The Douglasses allege that John Beakley was the only agent able to act on behalf of these and other entities invested in, either individually or through another entity that acted as general partner for which he was the only agent. *Id.* at ¶ 55.

The Douglasses state that they cannot determine exactly where their money was invested and how, due to the complicated nature of the various entities set up and invested in and the alleged lack of proper disclosures. *Id.* at ¶ 57. They also allege that funds from Roundtable Corporation were used

[4]RH Real Estate Development, Ltd. and Defendant RHRE Real Estate Development, Ltd. appear to be the same entity.

to pay operating expenses and offset losses of the unprofitable businesses, funds were commingled between corporate entities and partnerships, the Douglasses were not given interests in all the entities which were receiving their funds, and Defendants failed to make proper disclosure of these actions to the Douglasses. *Id.* at ¶¶ 58-61. Defendants also allegedly used the Douglasses' funds to provide undisclosed, related-party loans to John Beakley and other businesses and to pay Defendant Mary Jan Beakley's mortgages. *Id.* at ¶¶ 70, 73. Further, the Douglasses claim that the actual return on their investments was exaggerated to them, Defendants charged them excessive fees which were not properly disclosed, and Defendants also failed to properly disclose unpaid taxes by several of the Beakley Entities, all out of fear that the Douglasses would immediately demand the return of their funds if the true return rate and facts were disclosed. *Id.* at ¶¶ 78-100.[5]

In 2011 the Douglasses began to raise questions with the Defendants about their investments. They further maintain that, rather than fully disclosing the true financial condition of their investments, John Beakley, acting for and on behalf of Beakley & Associates, continued to reassure the Douglasses for several months that their investments were worth $12-14 million in order to avoid the complete financial collapse in the Beakley Entities that would occur if the Douglasses withdrew their investments, knowing that the true value was much lower or zero. *Id.* at ¶ 137. Dissatisfied with such assurances and fearing the loss of their capital, the Douglasses filed suit seeking rescission of their investment contract with Defendants, restitution of any consideration paid, return of their

---

[5]These various allegations of excessive fees, commingling of assets, improper disclosure, and other malfeasance are repeated throughout the Amended Complaint. The Court makes only a brief summary of the allegations.

invested funds, and damages in connection with John Beakley's alleged mismanagement of their investments.

For their part, Defendants did not supply their version of events in their initial Motion to Dismiss. However, in various submissions throughout this case, the Defendants have maintained that the Douglasses not only received all required disclosures but also have greatly benefitted from approximately $330,000 in annual cash distributions for the last eleven years. *See*, *e.g.*, Mar. 14, 2012 Hr'g Tr., filed Apr. 5, 2012, at 66. They further maintain that the Douglasses' funds were legitimately invested; their investments have been subject to regular audits; and any decrease in their investments' value was caused by the general economic decline in the United States over the past few years, temporary setbacks with the businesses involved in these investments, or the Douglasses' own actions in initiating lawsuits against John Beakley and other Defendants. *See*, *e.g.*, Mar. 14, 2012 Hr'g Tr. at 72; Apr. 12, 2012 Hr'g Tr., filed May 18, 2012, at 22-23. Defendants also claim that the Douglasses knew that these investments were long-term investments with limited liquidity. *See*, *e.g.*, Defs.' Emergency Mot. Mar. 12, 2012 at 7. In essence, in addition to alleging several defects in the pleadings, Defendants argue that the Douglasses' funds have been properly invested and managed and therefore the claims against them must be dismissed.

## II.

## PROCEDURAL HISTORY

The Douglass family filed its Original Complaint in the Lubbock Division of the Northern District of Texas on March 1, 2012. The court in Lubbock later severed John Beakley and Roundtable Corporation from the case pursuant to their bankruptcy filings and transferred the case to the Dallas Division. After transfer, this Court granted Defendants' Motion to Dismiss at a hearing

on the Motion held July 31, 2012, finding, *inter alia*, that the Original Complaint did not state a claim against the remaining defendants given its focus on John Beakley's actions and the Complaint's lack of a connection between his actions and the other Defendants. The Court gave the Douglasses thirty days to file an amended complaint and instructed them to file a Synopsis with their Amended Complaint detailing how the amended pleadings overcame the deficiencies in the Original Complaint. The Court also permitted Defendants to file a response. The Douglasses filed their Amended Complaint and accompanying Synopsis September 4, 2012, and Defendants filed their Response on September 14, 2012. As such, the Amended Complaint is ripe for evaluation.

## III.

## LEGAL STANDARD

A. *Rule 12(b)(6)*

In analyzing a motion under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). The motion should be granted only if the complaint does not include enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim must be "nudged . . . across the line from conceivable to plausible." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *SW Bell Tel., LP v. City of Hous.*, 529 F.3d 257, 260 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

B. *Rule 9(b)*

A dismissal for failure to plead with particularity in accordance with Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") is treated as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Rule 9(b) provides, in pertinent part, that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The amount of particularity required for pleading fraud differs from case to case. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003); *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific"). In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citation omitted); *see also Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). In other words, the complaint must provide "the essentials of the first paragraph of any newspaper story, namely the who, what, when, where, and how." *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994) (citation omitted).

**IV.**

**ANALYSIS**

The Douglasses' Original Complaint asserted claims for securities fraud, conspiracy, violations of the Investment Advisers Act, breach of fiduciary duty, fraud, and unjust enrichment, all of which were asserted against Defendants John William Beakley, several other members of the Beakley family, and numerous corporate entities, including Beakley & Associates, FLP, and Roundtable Corporation

—in total, over one hundred defendants. On repleading, the Douglasses drop their securities fraud and conspiracy claims, and they also drop most defendants from the Amended Complaint, asserting claims against twenty-one named defendants.[6] The Amended Complaint also narrows its claims so that the Douglasses no longer assert all claims against all defendants. Specifically, the Amended Complaint asserts violation of the IAA by BAPC and FLP; common law fraud against BAPC, FLP, and "the Entity Defendants that the Douglasses Directly Invested in According the Defendants' Representations in the Exhibits Attached to this Complaint"; breach of fiduciary duty by BAPC and FLP; and unjust enrichment and assumpsit against all Defendants. Finally, the Amended Complaint now asserts that John Beakley acted through and for BAPC and FLP at all times, in contrast to the Original Complaint, which alleged that John Beakley acted through and for all defendants at all times. The Court will now look to the Amended Complaint to determine whether it corrected the deficiencies of the Original Complaint.

A. *Liability of BAP, FLP, and other Entities for John Beakley's Actions*

The parties dispute whether BAP, FLP, and other Beakley Entities may be held liable for the actions of John Beakley. The Court previously noted that the Original Complaint was focused almost

[6]The Amended Complaint also asserts claims against fifteen John Doe Defendants, described as "entities through whom the Douglasses' money was invested or otherwise used to benefit; . . . entities who are liable as principal of the conduct complained of herein, . . . persons or entities that conspired, aided and abetted, controlled, and/or participated in the actions complained or herein, and . . . persons or entities who have been unjustly enriched, at the very minimum." FAC ¶ 26. In contrast, the Original Complaint asserted claims against fifty John Doe Defendants, whom they identified as "either (1) other alter ego entities of Defendant John William Beakley; (2) persons or entities who have aided, abetted, conspired with, assisted in, furthered, directly or indirectly benefitted from, and/or who are responsible for, through agency relationship or otherwise, the actions and/or inactions complained of herein; and/or (3) offshore entities or persons who have received money or remuneration from the actions and/or inactions complained of herein that should rightfully return such money or remuneration to the plaintiffs, other investors, and/or the United States Government." Original Compl. at 37.

entirely on the actions of John Beakley and sought to impute liability on all named defendants, including his family members, with little explanation of how they might be held liable for his actions or what they may have done themselves. The Amended Complaint now restricts most of its claims to BAPC and FLP and also alleges throughout that John Beakley acted through and on behalf of these two corporate entities, in his capacity as partner, officer, authorized agent, vice-principal, or employee.[7] *See*, *e.g.*, FAC ¶¶ 202; *see also* FAC ¶¶ 55-56, 63 (alleging that John Beakley was the only agent able to act on behalf of the Beakley Entities). A principle may be vicariously liable for the conduct of its agent if the agent acted with actual or apparent authority or if the principal ratified the conduct. *See NationsBank, N.A. v. Dilling*, 922 S.W. 2d 950, 953 (Tex. 1996); *Disney Enters. v. Esprit Fin., Inc.*, 981 S.W.2d 25, 31 (Tex. App.— San Antonio 1998). Without determining whether John Beakley in fact acted with actual or apparent authority or whether a principal ratified his conduct, the Court declines to dismiss the Amended Complaint as to the Beakley Entities for failure to plead that they are vicariously liable for John Beakley's actions.[8]

*B. Investment Advisers Act Claims*

The Douglasses allege that Beakley & Associates and FLP violated several provisions of the Investment Advisers Act of 1940 ("IAA"), including Sections 203, 205, 206, 207, and 208,[9] "thereby rendering the agreement to provide investment advisory services void, and entitling Plaintiffs as a

---

[7]The specific allegations of the Amended Complaint as to each claim are detailed below. *See* Section IV(B)–(E), *infra*.

[8]The Douglasses previously argued that the Court should "reverse-pierce the corporate veil" in order to hold the Beakley Entities liable for John Beakley's actions. Original Compl. 73. The Court does not express an opinion on such theory at this time.

[9]The IAA is codified at 15 U.S.C. § 80b-1 through 15 U.S.C. § 80b-21. In discussing the Act, the Court uses the section numbers of the Act rather than the section numbers of the United States Code.

matter of law to rescind that agreement and to receive disgorgement of all fees, compensation, and other economic benefit received by the investment adviser and persons associated with investment adviser Defendants." FAC ¶ 178 (citing *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 18-24 (1979)). The Court first looks to whether the Amended Complaint pleads that BAPC and FLP are subject to the IAA and then looks to whether it pleads violations of Sections 203, 205, 206, 207, and 208, such that the Douglasses would be entitled to rescission and restitution under Section 215 of the IAA.[10]

1. Does the IAA Apply?

The Investment Advisers Act regulates the activities of investment advisers, defined generally as a person who offers advice or makes recommendations on securities. IAA § 202(a)(11). Excluded from the IAA's definition are, *inter alia*, accountants whose investment advice is given "solely incidental to the practice of his profession" and "any broker or dealer whose performance of such

[10]The limited remedy of rescission is available for violations of the IAA pursuant to Section 215(b) of the IAA, which states:

> Every contract made in violation of any provision of this title and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this title, or any rule, regulation, or order thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, regulation, or order, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision.

Cases discussing the Section 215 rescission remedy generally do so in the context of allegations of violations of Section 206. However, given the language of Section 215, its rescission remedy appears to be available in connection with violations of any section of the IAA, not Section 206 alone. Restitution is also available under the IAA pursuant to Section 215, as discussed by the Supreme Court in *Transamerica*, 444 U.S. at 24, and as discussed below in this Opinion.

services is solely incidental to the conduct of his business as a broker or dealer and who receives no special compensation therefor." *Id.* Under the IAA, "person" means a "natural person or company." *Id.* at § 202(a)(16). Defendants have previously argued that the exceptions contained within Section 202(a)(11) apply to them such that they are not subject to the IAA—specifically, they argued that John Beakley's investment advice was rendered solely incidental to his accounting practice. Defendants also argued in their initial Motion to Dismiss that they were exempt from all other requirements of the IAA. *See* Mot. Dismiss Mar. 27, 2012 at 8-11.

Upon reviewing the pleadings, the Court concludes that a determination of whether any of the Section 202(a)(11) exceptions applies, or whether any other exceptions within the IAA apply, is a factual issue that cannot be resolved on a motion to dismiss.[11] Further, the Court concludes that the Amended Complaint pleads that Beakley & Associates and FLP, through John Beakley, rendered investment advise to the Douglasses regarding their initial investments and also on an ongoing basis. As such, taking the allegations of the Amended Complaint as true, BAPC and FLP are investment advisers are subject to the IAA.

---

[11]*See*, *e.g.*, Applicability of the Investment Advisers Act to Financial Planners, Pension Consultants, and Other Persons Who Provide Investment Advisory Services as a Component of Other Financial Services, SEC Release No. IA-1092, 1987 WL 112702, *6 (Oct. 8, 1987) ( "[T]he exclusion contained in Section 202(a)(11)(B) is not available, for example, to a lawyer or accountant who holds himself out to the public as providing financial planning, pension consulting, or other financial advisory services. In such a case it would appear that the performance of investment advisory services by the person would not be incidental to his practice as a lawyer or accountant." The parties disagree whether John Beakley and Beakley & Associates held themselves out to the public as providing financial advisory services, and whether or not they did in fact hold themselves out to the public as providing financial advisory services is a factual dispute that must be resolved via an examination of, at a minimum, summary judgment evidence, given that Amended Complaint clearly alleges that John Beakley and Beakley & Associates held themselves out to at least the Douglasses as providing such services.

Defendants also argue that the Douglasses' claims for violations of the IAA are not actionable because "[t]here is only one remedy available in a private civil action brought under the IAA—voiding an investment adviser contract." Defs.' Synopsis Resp. 2 (citing *Transamerica*, 444 U.S. at 24). The *Transamerica* court specifically explained that "there exists a limited private remedy under the Investment Advisers Act of 1940 to void an investment advisers contract, but . . . the Act confers no other private causes of action, legal or equitable." 444 U.S. at 24. However, the *Transamerica* court further explained that "[w]here rescission is awarded, the rescinding party may of course have restitution of the consideration given under the contract, less any value conferred by the other party." *Id.* at 25 n.14 (citing 5 A. Corbin, Contracts § 1114 (1964)).

There is limited case law on what restitution means in the context of the IAA. However, the *Transamerica* court explained that restitution "would not . . . include compensation for any diminution in the value of the rescinding party's investment alleged to have resulted from the adviser's action or inaction," which would in effect "provide by indirection the equivalent of a private damages remedy that we have concluded Congress did not confer." *Id.* Thus, the only apparent remedy available to an aggrieved investor under the IAA, aside from rescission, would be commissions, fees, or other compensation paid to the investment advisor pursuant to the investment contract. *See*, *e.g.*, *L.W. Laird v. Integrated Res., Inc.*, 897 F.2d 826, 841-42 (5th Cir. 1990) (investor could not rescind contracts for sale or purchases of securities made in violation of IAA); *Goldstein v. Malcolm G. Fries & Assocs., Inc.*, 72 F. Supp. 2d 620, 625 (E.D. Va. 1999) (dismissing IAA claim where plaintiff sought damages under Section 206 and did not request rescission under Section 215); *Wallet v. Bendelac (In re Bendelac)*, Adversary No. 03-03457 (CGM), 2005 WL 3789126, at *15 n.5 (Bankr. S.D.N.Y. Sept. 1, 2005) (even if adviser engaged in fraud in violation of IAA, only remedy

available through restitution would be for the amount of commissions paid). *But see Frank Russell Co. v. Wellington Mgmt. Co.*, 154 F.3d 97, 102 (3d Cir. 1998) (dismissing IAA claim given that, by bringing suit claiming violation of Section 206 where contract had already been canceled, the plaintiff "[i]n effect . . . affirms the contract," when the only remedy available under the IAA is rescission under Section 215, and *Transamerica* "expressly prevents a private party from suing for a breach of the § 206 duties").

Here, the Douglasses seek rescission of their investment contract with BAPC and FLP and disgorgement of all fees, compensation, and other economic benefit received by the investment adviser and persons associated with the investment adviser Defendants. FAC ¶ 178. As such, this case is distinguishable from cases where courts have dismissed IAA claims brought by investors seeking damages. *See*, *e.g.*, *Corwin, D.D.S. v. Marney, Orton Invs.*, 788 F.2d 1063, 1066 (5th Cir. 1986) (affirming dismissal of IAA claims because "[t]he investors seek damages, not the voiding of an investment advisers contract, and there is no such private cause of action based on this statute"). Here, the Douglasses allege that they were charged excessive and undisclosed fees pursuant to their contract with BAPC and FLP, noting, for example, income listed on John Beakley's "Statement of Financial Condition" dated December 31, 2010, which included a $150,000 guarantor fee paid by Roundtable Corporation, FAC ¶ 79 (citing FAC Ex. A), and $138,540.98 in accounting fees paid by Roundtable Corporation, FAC ¶ 80 (citing FAC Ex. N). Without expressing an opinion whether these fees or any other fees are in fact recoverable through Section 215's rescission remedy, the Court concludes that the Douglasses have properly asserted a claim for rescission and restitution pursuant to the IAA.

The Court also concludes, however, that the Douglasses' request that the Court "rescind each underlying transaction made in violation of the [IAA]" must be denied. This request appears to be the same request denied by the Fifth Circuit in *L.W. Laird*, where the plaintiffs requested the court "to rescind each said contract of purchase and/or sale made in violation" of the IAA. 897 F.2d at 841. However, the plaintiffs in that case also requested rescission of their investment contracts, and the court, examining Federal Rules of Civil Procedure 8 and 54, found that the plaintiffs' failure to request the proper remedy under the Investment Advisers Act "d[id] not vitiate their claim." Here, also, the Douglasses request relief unavailable under the IAA, specifically rescission of the underlying transactions carried out pursuant to their investment contract with Defendants, while also seeking rescission and return of any consideration paid to BAPC and FLP. Given the Douglasses' request for relief which is available under the IAA, namely rescission and restitution, the Court declines to dismiss the IAA claim on account of their accompanying request for relief which is not available, namely voiding the various transactions engaged in by BAPC and FLP on behalf of the Douglasses.

Defendants also argue that the Douglasses have not alleged the existence of a contract between them and any Defendant that may be rescinded under the IAA. Defs.' Synopsis Resp. 3 (citing 15 U.S.C. § 80b-15 and Transamerica, 444 U.S. at 24). However, the Amended Complaint discusses how the Douglasses "decided to invest their money under the advice and care" of John Beakley and Beakley & Associates based on various assurances from John Beakley that their interests would be "looked out for and safely cared for." FAC ¶¶ 42-43. The Amended Complaint also discusses various fees collected by Beakley & Associates and FLP from the Douglasses' funds and the Douglasses' allegation that Beakley & Associates' violation of the IAA rendered "the agreement to

provide investment advisory services void." Overall, reading the Amended Complaint in a light most favorable to Plaintiffs, the Court finds that the Amended Complaint pleads the existence of an investment contract between the Douglasses and Beakley & Associates and FLP to render investment advice and services.[12]

2. Section 203(a)

Section 203(a) of the IAA states that it shall be unlawful for any investment adviser to make use of the mails or interstate commerce in connection with his or its business as an investment adviser without meeting the registration requirements contained in the IAA. The Amended Complaint alleges, *inter alia*, that BAPC and FLP failed to register as investment advisers when such registration was required. *See*, *e.g.*, FAC ¶ 179. Defendants do not specifically challenge the Section 203(a) allegations in their response to Plaintiffs' Synopsis but previously argued that they were exempt from registration pursuant to Section 203(b).[13] However, the Court concludes that whether

---

[12]Without expressing an opinion on whether there is in fact an investment contract, the Court notes that Defendants' Emergency Motion attached a management agreement between FLP and "each of the Douglass Entities . . . to have FLP manage each of the limited partnerships in exchange for a 2% management fee." Defs.' Emergency Motion Mar. 12, 2012 at 6.

[13]Defendants previously cited 15 U.S.C. § 80b-1, *et. seq.*, in support of this contention, which is the general citation for the Investment Advisers Act. Mot. Dismiss Mar. 27, 2012 at 8 n.28. Defendants appear to be citing Section 203(b)(1) for at least part of their arguments. Section 203(b)(1) states:

> The [registration requirement] of subsection (a) shall not apply to—
> (1) any investment adviser, other than an investment adviser who acts as an investment adviser to any private fund, all of whose clients are residents of the State within which such investment adviser maintains his or its principal office and place of business, and who does not furnish advice or issue analyses or reports with respect to securities listed or admitted to unlisted trading privileges on any national securities exchange . . . .

Whether or not John Beakley's clients are all Texas residents and whether or not he furnished advice or information on nationally traded securities is a factual issue inappropriate on a motion to dismiss.

or not BAPC and FLP were exempt from the registration requirements is a factual determination inappropriate for resolution on a motion to dismiss.

3. Section 205(a)(1),(2)

Section 205(a) of the IAA states:

> No investment adviser registered or required to be registered with the Commission shall enter into, extend, or renew any investment advisory contract, or in any way perform any investment advisory contract entered into, extended, or renewed on or after the effective date of this title, if such contract—
>
> (1) provides for compensation to the investment adviser on the basis of a share of capital gains upon or capital appreciation of the funds or any portion of the funds of the client; [or]
>
> (2) fails to provide, in substance, that no assignment of such contract shall be made by the investment adviser without the consent of the other party by the contract . . . .

The Amended Complaint alleges that BAPC and FLP violated Section 205(a)(1) "by unilaterally taking compensation for investment advisory services on the basis of a share of capital gains or upon capital appreciation of the funds of the Plaintiffs," FAC ¶ 180, and violated Section 205(a)(2) "by assigning the benefits of the agreement to provide investment advisory services to others, namely the entities and individual defendants specifically indicated herein," *id.* at ¶ 181. Defendants do not specifically challenge the Douglasses' Section 205 claims in their Response to the Synopsis but previously argued that Section 205 was inapplicable given their arguments that they were not subject to the IAA's registration requirements. Viewing the Amended Complaint as a whole and in a light most favorable to the Plaintiffs, the Court finds that it pleads violations of Section 205(a)(1) and Section 205(a)(2) against BAPC and FLP, given its allegations that FLP and the Beakley family members were given significant ownership and capital interests in various investments jointly with the Douglasses although they "provided little or de minimus [sic] capital contributions for their

respective ownership," FAC ¶¶ 48-50, and its various allegations of improper disclosures of fees and transactions.

4. Section 206

Section 206 states:

> It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly—
>
> (1) to employ any device, scheme, or artifice to defraud any client or prospective client;
>
> (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client;
>
> (3) acting as principal for his own account, knowingly to sell any security to or purchase any security from a client, or acting as broker for a person other than such client, knowingly to effect any sale or purchase of any security for the account of such client, without disclosing to such client in writing before the completion of such transaction the capacity in which he is acting and obtaining the consent of the client to such transaction. The prohibitions of this paragraph (3) shall not apply to any transaction with a customer of a broker or dealer if such broker or dealer is not acting as an investment adviser in relation to such transaction; or
>
> (4) to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative. The Commission shall, for the purposes of this paragraph (4) by rules and regulations define, and prescribe means reasonably designed to prevent, such acts, practices, and courses of business as are fraudulent, deceptive, or manipulative.

The Fifth Circuit has also explained that Section 206(1) requires a showing of scienter to establish liability, though Section 206(2) does not. *Laird*, 897 F.2d at 836 n. 37 (citing *Steadman v. SEC*, 603 F.2d 1126, 1134 (5th Cir. 1979); *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 192 (1963)).

The Amended Complaint alleges that BAPC and FLP violated IAA by engaging in transactions prohibited by Section 206, including employing a device, scheme, or artifice to defraud the Douglasses, engaging in transactions, practice, and course of business that operated as a fraud and deceit upon the Douglasses, and acting as a principal for their own account in transactions with

the Douglass family without the necessary disclosures required under Section 206(3). FAC ¶¶ 182-87. Specifically, the Amended Complaint alleges, *inter alia*, that the Douglasses' funds were improperly commingled between corporate entities and partnerships, the Douglasses were not given interests in all the entities which were receiving their funds, and Defendants failed to make proper disclosure of these actions. *Id.* at ¶¶ 58-61. The Amended Complaint also alleges that Defendants used the Douglasses' funds to provide undisclosed, related-party loans to John Beakley and other businesses, *id.* at ¶ 70, and payment of Defendant Mary Jan Beakley's mortgages, *id.* at ¶ 73.

The Amended Complaint also alleges that BAPC and FLP, through John Beakley, exaggerated the actual rate of return on the Douglasses' investments multiple times out of fear that the Douglasses would immediately demand the return of their funds if the true rate was disclosed. *Id.* at ¶¶ 78, 86-93. Also, the Douglasses claim that Defendants charged them excessive fees which were not properly disclosed to them and failed to properly disclose unpaid taxes by several of the Beakley entities, also out of fear that proper disclosure would cause the Douglasses to demand return of their funds. *Id.* at ¶¶ 79-85, 94-100.[14] At a minimum, such allegations, taken as true, allege that BAPC's and FLP's actions operated as a fraud or deceit on the Douglasses and state a claim for violations of Section 206(2). Accordingly, the Court declines to dismiss the Douglasses' Section 206 claims for failure to state a claim.

---

[14]These various allegations of excessive fees, commingling of assets, improper disclosure, and other wrongful acts are repeated throughout the Amended Complaint. The Court makes only a brief summary of the allegations.

C. *Common Law Fraud*

In Texas, an individual may base a fraud claim on either an affirmative false representation or nondisclosure. *See Jones v. Tex. Dep't. of Protective & Regulatory Servs.*, 85 S.W.3d 483, 491 (Tex. App.—Austin 2002) (citation omitted) (fraud "may consist of both active misrepresentation and passive silence"); *see also Dorsey v. Portfolio Equities Inc.*, 540 F.3d 333, 341 (5th Cir. 2008) (listing the elements of fraud based on both an affirmative false representation and nondisclosure). Plaintiffs essentially allege fraud in violation of the IAA based on both theories. A claim based upon an affirmative misrepresentation consists of "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (citations omitted). The elements of a fraud claim based upon nondisclosure are: "(1) the defendant failed to disclose facts to the plaintiff; (2) the defendant had a duty to disclose those facts; (3) the facts were material; (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts; (5) the defendant was deliberately silent when it had a duty to speak; (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting; (7) the plaintiff relied on the defendant's nondisclosure; and (8) the plaintiff was injured as a result of acting without that knowledge." *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 508 n.27 (Tex. App.—Houston [14th Dist.] 2007) (gathering elements from Texas cases) (citations omitted).

Here, the Douglasses allege that BAPC and FLP failed to disclose and misrepresented, *inter alia*, the true value and nature of their investments, as shown by Exhibits D, G, H, and I, detailing

emails and letters from June 3, 2009, August 25, 2010, September 16, 2010, and January 7, 2011 and also telephone conversations from the summer of 2011. For example, the Amended Complaint alleges that John Beakley, acting with full authority of each of the Beakley Entities, represented to the Douglasses in a June 3, 2009 email that their investments had enjoyed a 6.5% after-tax rate of return over eight years when in fact the actual rate of return at the time of the statement was zero or negative. *See*, *e.g.*, FAC ¶ 78. The Amended Complaint also alleges that John Beakley intentionally represented to the Douglasses in an August 25, 2010 email that their investments were worth approximately $14 million, when in fact the true value was much lower or zero, and also intentionally failed to disclose various tax problems of the Beakley Entities. *See*, *e.g.*, *id.* at ¶¶ 81-85, 88. The Amended Complaint further alleges that BAPC and FLP, through John Beakley, made these misrepresentations or omissions knowing that the Douglasses would demand return of their capital if given the true information, and such misrepresentations and nondisclosures in fact caused the Douglasses to continue investing their funds with BAPC and FLP and the eventual loss of all or most of their capital. Taking these allegations as true, the Court finds that the Amended Complaint states a claim against BAPC and FLP for common law fraud. Such allegations, which attach emails and reports setting forth the misrepresentations or omitted information, also meet the Rule 9(b) specificity requirements, setting forth who made these misrepresentations, when the representations were made, and how they were made, as well as why they were false when made.[15] *See*, *e.g.*, *Plotkin*, 407 F.3d at 696; *Southland*, 365 F.3d at 362; *Melder*, 27 F.3d at 1100 n.5

[15]For purposes of examining the Amended Complaint, the Court need not determine whether BAPC or FLP committed fraud at the time the Douglasses initially invested funds with them through John Beakley, given the allegations that Defendants continued to make misrepresentations and omissions regarding the true state of the Douglasses' investments in order to keep the Douglasses from withdrawing their funds.

*D. Breach of Fiduciary Duty*

In Texas, the elements for breach of fiduciary duty are (1) the existence of a fiduciary relationship between plaintiff and defendant, (2) the defendant's breach of the fiduciary duty it owed plaintiff, and (3) the breach either caused injury to the plaintiff or benefit to the defendant. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (quoting *Jones v. Blume*, 196 S.W.3d. 440, 447 (Tex. App.—Dall. 2006, pet. denied)). Texas law recognizes two types of fiduciary duties. *Id.* "The first, a formal fiduciary relationship, 'arises as a matter of law and includes the relationships between attorney and client, principal and agent, partners, and joint venturers.'" *Id.* (quoting *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App.—Houston [1st Dist.] 2003, no pet.)). The second is created informally, where there is a close personal relationship of trust and confidence. *Willis v. Donnelly*, 199 S.W.3d 262, 277 (Tex. 2006). This second type of fiduciary duty arises from a "moral, social, domestic, or purely personal relationship of trust and confidence." *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005) (citations omitted). Texas law does not impose such a relationship lightly, and "not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176-77 (Tex. 1997) (citations omitted). Further, neither subjective trust alone nor "the fact that the relationship has been a cordial one, of long duration" necessarily transforms a relationship into a fiduciary relationship. *Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App.—Houston [14th Dist.] 1997, pet. denied). However, whether an informal fiduciary relationship exists is typically a question of fact. *See, e.g*, *Kaspar v. Thorne*, 755 S.W.2d 151, 155 (Tex. App.—Dall. 1988) (citation omitted).

Here, the Amended Complaint alleges both an informal fiduciary relationship between the the Douglasses and John Beakley and a formal relationship between the Douglasses and BAPC and

FLP. Whether or not an informal confidential relationship between the Douglasses and the Beakleys can be imputed to BAPC and FLP is an open question. However, the Court need not determine that issue given that the Amended Complaint clearly pleads a formal fiduciary relationship of some type between the Douglasses and BAPC and FLP, either as principal and agent or partners.[16] Further, the Amended Complaint also alleges that BAPC and FLP failed to make proper disclosures, improperly commingled funds, and charged the Douglasses excessive fees, resulting in harm to the Douglasses and enrichment of the Defendants through the Douglasses' funds and payment of fees. Overall, the Amended Complaint states a claim for breach of fiduciary duty.[17]

*E. Unjust Enrichment*

"A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage," *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (citation omitted), or "when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain," *Villareal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004) (citation omitted).[18] It "is not a proper remedy merely because it 'might appear

---

[16]The Court also notes the *Transamerica* court's recognition that Section 206 of the IAA "establishes federal fiduciary standards to govern the conduct of investment advisers." *See* 444 U.S. at 17 (citations omitted).

[17]Defendants did not specifically challenge the breach of fiduciary duty claim in either their Motion to Dismiss nor in their Response to the Douglasses' Synopsis.

[18]Some Texas courts have expressed the view that unjust enrichment is not an independent cause of action "but rather characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay." *See Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dall. 2006) (citations omitted). The Court assumes, without deciding, that unjust enrichment is an independent cause of action in assessing the Amended Complaint.

expedient or generally fair that some recompense be afforded for an unfortunate loss' to the claimant, or because the benefits to the person sought to be charged amount to a windfall." *Heldenfels Bros.*, 832 S.W.2d at 42 (citing *Austin v. Duval*, 735 S.W.2d 647, 649 (Tex. App.—Austin 1987)). Unjust enrichment is bottomed on the "equitable principle holding that one who receives benefits unjustly should make restitution for those benefits." *Villarreal* 136 S.W.3d at 270; *see also Walker v. Cotter Props., Inc*., 181 S.W.3d 895, 900 (Tex. App.—Dall. 2006, no pet.). Unjust enrichment is a quasi-contractual claim which is based on the absence of an express agreement, and "[g]enerally, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory . . . . because parties should be bound by their express agreements." *Fortune Prod. Co. v. Conoco, Inc*., 52 S.W.3d 671, 683-84 (Tex. 2000).

Defendants challenge this claim with respect to Mary Adams Beakley, David Janson Beakley, Joel William Beakley, and Amy Janise Beakley (the "Individual Defendants"), arguing that "Plaintiffs do not claim that the individual Defendants acted against them in obtaining the allegedly unjust benefits." Defs.' Synopsis Resp. 6. The Court first notes that a party may plead alternative claims or theories of liability, and therefore the Douglasses may allege both the existence of a contract between them and Beakley & Associates and FLP and also assert an unjust enrichment against them, especially considering that Defendants argue that the Douglasses do not allege the existence of an investment contract. The Court next notes that the Douglasses have alleged that Defendants have either wrongfully secured a benefit or have passively received (and retained) benefits from the Douglasses, including, but not limited to, improper distributions from entities owned by the Douglasses, excessive fees, improper loans, and other benefits, despite the lack of any or a meaningfully similar capital contribution. *See*, *e.g.*, FAC ¶¶ 154-161. The Court agrees that the

Amended Complaint does not sufficiently allege that the Individual Defendants specifically acted against the Douglasses in obtaining their allegedly unjust benefits, but it does sufficiently allege that the Individual Defendants at least passively received unjust benefits and that it would be unconscionable to retain these benefits. Accordingly, the Court declines to dismiss the Douglasses' unjust enrichment claim.

*F. Other Counts*

The Amended Complaint's Fifth, Sixth, Seventh, and Eighth Causes of Action are not in fact causes of action but rather theories of liability or claims for relief, and the Court declines to address them at this time.

## V.

## CONCLUSION

For the reasons set forth above, the Court declines to dismiss the Amended Complaint for failure to meet the applicable Rule 12(b)(6) and Rule 9(b) pleading standards.

**SO ORDERED.**

**DATED: October 24, 2012.**

**JANE J. BOYLE**
**UNITED STATES DISTRICT JUDGE**